Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| CHRISTIAN RIVERA MEDINA<br><br>**RECURRIDO**<br><br>v<br><br>YARITZA ACEVEDO SALAS<br><br>**PETICIONARIA** | TA2025CE00497 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm. FA2022RF00006<br><br>Sobre: Ruptura Irreparable |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2025.

### I.

El 23 de septiembre de 2025, la señora Yaritza Acevedo Salas (señora Acevedo Salas o peticionaria) presentó digitalmente un recurso de *Certiorari* en el que nos solicitó que revoquemos la *Resolución Interlocutoria Enmendada* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI o foro primario), el 12 de agosto de 2025, notificada y archivada digitalmente en autos el mismo día.[2] Mediante dicho dictamen, el TPI determinó que la peticionaria incumplió con un dictamen previo relacionado al cambio de escuela de los menores, hijos de ambos y le impuso una sanción de diez mil dólares ($10,000) a favor del señor Christian Rivera Medina (señor Rivera Medina o recurrido), a ser satisfecha en sesenta (60) días, so pena de desacato.

---

[1] Véase Orden Administrativa OATA2021-086 del 4 de noviembre de 2021.
[2] Véase Entrada Núm. 252 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

El 25 de septiembre de 2025, emitimos una *Resolución* en la que le concedimos al señor Rivera Medina hasta el 2 de octubre de 2025 para presentar su posición respecto a la expedición del recurso.[3]

El 1 de octubre de 2025, el recurrido presentó una *Moción Primera Comparecencia y Solicitud de Prórroga para Cumplimiento de Orden por justa causa,* en la que solicitó una prórroga de cinco (5) días para presentar su posición.[4]

El 2 de octubre de 2025, emitimos una *Resolución* en la que le concedimos al recurrido hasta el 10 de octubre de 2025, para exponer su posición sobre los méritos del recurso.[5]

El 10 de octubre de 2025, el recurrido presentó una *Urgente Moción Informativa y Solicitud de Brevísima Prórroga por Justa Causa,* en la que solicitó una breve prórroga hasta el 14 de octubre de 2025 para presentar su posición al recurso.[6]

El 14 de octubre de 2025, emitimos una *Resolución* en la que concedimos la prórroga solicitada, como término final.[7]

Ese mismo día, el recurrido presentó una *Oposición a Solicitud de Certiorari y Solicitud Desestimación por Falta de Jurisdicción,* en la que solicitó la desestimación del recurso o, en la alternativa, que confirmemos la *Resolución* recurrida.[8]

En varias mociones presentadas el 14 y 15 de octubre de 2025, el recurrido presentó varios documentos que conforman el apéndice de su escrito.[9]

---

[3] Véase Entrada Núm. 2 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[4] Íd., Entrada Núm. 3.
[5] Íd., Entrada Núm. 4.
[6] Íd., Entrada Núm. 5.
[7] Íd., Entrada Núm. 8.
[8] Íd., Entrada Núm. 6.
[9] Íd., Entradas Núm. 7, 9, 10, 11, 12 y 13.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de *Certiorari*.

**II.**

El caso de marras tuvo su génesis el 10 de enero de 2022, cuando el señor Rivera Medina presentó una *Demanda sobre divorcio* por ruptura irreparable contra la señora Acevedo Salas en la que, además, solicitó la custodia compartida de sus hijos menores de edad. [10]

El 14 de febrero de 2022, la parte recurrida presentó una *Contestación a la demanda* en la cual se opuso a la solicitud de custodia compartida, solicito la custodia monoparental a su favor y que se decretará como hogar seguro la vivienda conyugal perteneciente a la Sociedad Legal de Gananciales ubicada en el pueblo de Rio Grande, Puerto Rico. [11]

Así las cosas, el 28 de febrero de 2022, el TPI dicto *Sentencia* en la cual declaró disuelto el vínculo matrimonial y acogió los acuerdos provisionales de las partes sobre las relaciones paternofiliales de los menores, además declaró el hogar conyugal como hogar seguro en favor de los menores. [12]

Posteriormente, el 8 de marzo de 2022, el TPI emitió una *Orden* mediante la cual refirió el caso a la Unidad de Trabajo Social de Relaciones de Familia para que ésta llevara a cabo un Estudio Social Forense sobre la adjudicación de custodia. [13]

Mediante una moción informativa, el recurrido informó que el 17 de junio de 2022, se celebró una vista en la Sala Municipal de Fajardo para atender las solicitudes de Órdenes de Protección

---

[10] Véase Entrada Núm. 1 en SUMAC-TPI.
[11] Véase Entrada Núm. 20 en SUMAC-TPI.
[12] Véase Entrada Núm. 27 en SUMAC-TPI. Notificada y archivada digitalmente en autos el 1 de marzo de 2022.
[13] Véase Entrada Núm. 30 en SUMAC-TPI. Notificada y archivada digitalmente en autos el 9 de marzo de 2022.

presentadas por la aquí peticionaria, la señora Acevedo Salas, una al amparo de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, 8 LPRA sec. 601 *et seq.*, (Ley 54) y otra bajo la entonces vigente *Ley para la Seguridad, Bienestar y Protección de Menores,* Ley Núm. 246-2011, 8 LPRA ant. secs. 1101 *et seq.* (Ley 246).[14]

El 13 de diciembre 2022, la Sala Municipal de Fajardo, mediante una *Resolución* denegó expedir la Orden de Protección bajo la Ley 54 solicitada.[15] Del mismo modo, en cuanto a la Orden de Protección bajo la Ley 246 en protección de los menores, la peticionaria desistió del caso.[16] Consecuentemente, el 19 de diciembre de 2022, el foro primario emitió una Orden acogiendo las recomendaciones de la Trabajadora Social y autorizó el comienzo de las relaciones paternofiliales supervisadas.[17]

El 28 de abril de 2023, el señor Rivera Medina le solicito al TPI que se reanudarán las relaciones paternofiliales provisionales dispuestas por sentencia.[18] Del mismo modo, la señora Acevedo Salas presentó su oposición al respecto, y solicitó que las relaciones paternofiliales fueran restablecidas gradualmente.[19]

Tras varios incidentes procesales, el 6 de noviembre de 2023, el TPI dictó una *Resolución Provisional* en la que estableció el plan paternofilial de forma provisional.[20] Luego de dictada la Resolución, y mientras aún estaba por presentarse el Informe Social, el peticionario solicitó la custodia monoparental de los menores.[21] El Informe Social, rendido por la Unidad de Trabajo Social no recomendó la custodia compartida, debido, entre otras cosas, a los

---

[14] Véase Entrada Núm. 53 en SUMAC-TPI.
[15] Véase Entrada Núm. 72 en SUMAC-TPI, anejos de la moción.
[16] Íd.
[17] Véase Entrada Núm. 76 en SUMAC-TPI. Notificada y archivada digitalmente el 20 de diciembre de 2022.
[18] Véase Entrada Núm. 77 en SUMAC-TPI.
[19] Véase Entrada Núm. 90 en SUMAC-TPI.
[20] Véase Entrada Núm. 137 en SUMAC-TPI. Notificada y archivada digitalmente en autos el 7 de noviembre de 2023
[21] Véase Entrada Núm. 139 en SUMAC-TPI.

problemas de comunicación entre las partes.[22] En su lugar, recomendó la ampliación de las relaciones paternofiliales. El 12 de febrero de 2024, el TPI, mediante *Resolución*, acogió los acuerdos entre las partes, concediendo un plan de relaciones paternofiliales amplio.[23]

La peticionaria informó que el 27 de enero de 2025, en la Sala Municipal de Fajardo, se expidió una Orden de Protección *ex parte* bajo la Ley 57-2023, 8 LPRA sec. 1641 *et seq.* (Ley 57), por alegados actos lascivos y/o agresión sexual perpetrados por el progenitor contra los menores.[24] La Orden de Protección tendría una vigencia desde el 27 de enero de 2025 hasta el 14 de febrero de 2025 y el asunto fue referido al Departamento de la Familia.[25] Consecuentemente, el 25 de marzo de 2025, se celebró la vista en su fondo, en la cual, tras desfilar la prueba, se expidió Orden de Protección final al amparo de la Ley 57, *supra,* por el término de un (1) año, a base del informe presentado por la Trabajadora Social de la Unidad de Investigaciones Especiales y de Emergencia del Departamento de la Familia.[26] El foro primario determinó que existía una probabilidad sustancial de riesgo inmediato de maltrato, y como consecuencia expidió una Orden de Protección en favor de los menores.

El 24 de abril de 2025, el recurrido presentó una *Moción Urgente en Solicitud de Orden,* en la que solicitó obtener información en cuanto a los menores de los asuntos académicos, copia del expediente médico de las evaluaciones físicas y/o hallazgos.[27] El 30 de abril de 2025, el TPI declaró No Ha lugar a la moción presentada por el recurrido.[28]

---

[22] Véase Entrada Núm. 142 en SUMAC-TPI, anejos de la moción a la pág. 98.
[23] Véase Entrada Núm. 162 en SUMAC-TPI.
[24] Véase Entrada Núm. 185 en SUMAC-TPI.
[25] Íd.
[26] Véase Entrada Núm. 189 en SUMAC-TPI, anejos de la moción.
[27] Véase Entrada Núm. 191 en SUMAC-TPI.
[28] Véase Entrada Núm. 196 en SUMAC-TPI.

Posteriormente, el 21 de mayo de 2025, la peticionaria presentó una solicitud de traslado del caso al área oeste y cambio de escuela de los menores.[29] Por su parte, el 9 de junio de 2025, el recurrido presentó una *Moción en Cumplimiento de Orden, Oposición a Moción de Traslado de la demandada y Urgente Solicitud de Vista Evidenciaria*, oponiéndose.[30]

El 9 de junio de 2025, mediante *Resolución*, el TPI declaró No Ha Lugar la solicitud de traslado hasta tanto no culminara la investigación ante el Departamento de la Familia.[31]

El 29 de julio de 2025, este mismo Panel emitió una *Resolución* en la que denegamos la expedición del recurso de apelación en el caso **Christian Rivera Medina v. Yaritza Acevedo Salas**, *TA2025AP00010*, acogido como *certiorari*, que el aquí recurrido presentó. En resumen, el recurrido señaló que el TPI erró al denegar la designación de un perito forense privado para intervenir en la validación de las alegaciones sobre actos lascivos en su contra, y que abusó de su discreción al extender *de facto* la orden de protección. En esa ocasión, determinamos no intervenir con la determinación del TPI.

Retomados los procesos ante el TPI, el 11 de agosto de 2025, el recurrido presentó una *Urgente Solicitud de Desacato y Señalamiento Vista Emergencia en 24 horas.*[32] En esta, alegó que la orden de protección únicamente tuvo el efecto de modificar las disposiciones con respecto a las relaciones paternofiliales, mientras que el resto de las disposiciones de la *Resolución* del 12 de febrero de 2024 se mantuvieron inalteradas. Adujo que, desde enero de 2025, la peticionaria no le ha provisto información alguna sobre los menores, de conformidad con la aludida *Resolución*.

---

[29] Véase Entrada Núm. 211 en SUMAC-TPI.
[30] Véase Entrada Núm. 231 en SUMAC-TPI.
[31] Véase, Entrada Núm. 232 en SUMAC-TPI. Notificada y archivada digitalmente el 10 de junio de 2025.
[32] Véase, Entrada Núm. 247 en SUMAC-TPI.

Específicamente, arguyó que la peticionaria no le ha provisto información sobre asuntos de educación, médicos y de disciplina de los menores, en clara violación al ejercicio de patria potestad compartida. Por lo cual, sostuvo que los actos unilaterales y deliberados constituyen un desacato a la autoridad del tribunal.

El 12 de agosto de 2025, el TPI celebró una vista mediante videoconferencia en la que atendió el asunto del traslado y cambio de escuela de los menores.[33] Según surge de la *Minuta*, el recurrido argumentó que la peticionaria lo privó del ejercicio de la patria potestad toda vez que dejó de proveerle información de los menores desde enero del año en curso, sobre los asuntos de salud y educación. Indicó que la peticionaria tampoco le consultó sobre el cambio de escuela ni le informó su ubicación actual en el pueblo de Moca. Por lo cual, solicitó que se denegara el traslado de los menores y se ordenara su regreso a la escuela en Carolina.

Por su parte, la peticionaria manifestó que en enero al darse el proceso de Orden de Protección se suspendió el proceso de coordinador de parentalidad, lo que provocó que se cortara la comunicación entre las partes. Alegó que, ante esa situación, acudió al TPI cuando recibió la oferta de empleo para consultar el cambio de escuela, en la que se le dio oportunidad al recurrido para expresarse.

Ese mismo día, el TPI emitió una *Resolución Interlocutoria Enmendada* en la que determinó que la señora Acevedo Salas incumplió con la Resolución del 12 de febrero de 2024.[34] En consecuencia, le impuso una sanción a la peticionaria de $10,000.00 a favor del recurrido, a ser satisfecha en sesenta (60)

---

[33] Véase Entrada Núm. 253 en SUMAC-TPI, que contiene la Minuta de los procedimientos.
[34] Véase Entrada Núm. 252 en SUMAC-TPI.

días, so pena de desacato. Además, la apercibió de cumplir con dicha Resolución y con las ordenes emitidas, so pena de desacato.

Oportunamente, el 13 de agosto de 2024, la peticionaria presentó una *Moción solicitando Reconsideración de Resolución Interlocutoria Enmendada del 12 de agosto de 2025.*[35]

Por su parte, el 3 de septiembre de 2025, el recurrido presentó una *Moción cumplimiento Orden en Oposición a Reconsideración.*[36]

Ese mismo día, el TPI emitió una *Resolución Interlocutoria* en la que declaró No Ha Lugar la solicitud de reconsideración de la peticionaria y Ha Lugar la oposición del recurrido.[37]

Inconforme con la determinación del TPI, el 23 de septiembre de 2025, la señora Acevedo Salas presentó el recurso de epígrafe en el que formuló el siguiente señalamiento de error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL IMPONER UNA PRIMERA SANCIÓN A LA COMPARECIENTE, CONTRA QUIEN NO MEDIARON SANCIONES PREVIAS MENOS ONEROSAS, Y AUSENTE UN R[É]CORD DE DILACIÓN DEL PROCESO DE EPÍGRAFE NI NINGÚN OTRO CIRTERIO(sic) DE LOS CONTEMPLADOS POR NUESTRO ORDENAMIENTO EN CUANTO A LA IMPOSICIÓN DE SANCIONES, POR LA EXORBITANTE CANTIDAD DE $10,000 A FAVOR DEL RECURRIDO, SIN CONSIDERACIÓN AL BIENESTAR DE LOS MENORES OBJETO DE ESTE CASO, AFECTANDO ASÍ LAS CAPACIDADES PROTECTORAS DE QUIEN OSTENTA LA CUSTODIA EXCLUSIVA DE LOS MENORES DE ESTE CASO, QUIENES ESTÁN SIENDO PROTEGIDOS POR UNA ORDEN DE PROTECCIÓN DE UN AÑO QUE PESA CONTRA EL RECURRIDO Y AL CONCEDER INCLUSO UNA ORDEN DE ARRESTO QUE ATENTA CONTRA LOS MENORES.**

Es su contención que el foro primario abusó de su discreción al imponer la sanción por la cantidad de diez mil dólares ($10,00.00) a favor del recurrido y no para que ingrese a las arcas del Estado. Alegó además que el expediente del caso está huérfano de cualquier sanción previa que haya sido impuesta en contra de la peticionaria. Específicamente, expuso que hay ausencia de cualquier conducta

---

[35] Véase Entrada Núm. 254 en SUMAC-TPI.
[36] Véase Entrada Núm. 258 en SUMAC-TPI.
[37] Véase Entrada Núm. 259 en SUMAC-TPI.

constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia. También, indicó que no surge que haya sido objeto de señalamiento alguno de incumplimiento con el acuerdo de estipulación entre las partes de febrero de 2024. Empero, arguyó que el expediente del caso refleja múltiples trámites de la peticionaria procurando el bienestar de los menores. Por todo lo cual, alegó que el foro primario abusó de discreción al darle peso a una determinación que no puede armonizarse con el bienestar de los menores.

Por su parte, el 14 de octubre de 2025, el recurrido presentó una *Oposición a Solicitud de Certiorari y Solicitud Desestimación por Falta de Jurisdicción.* En primer lugar, adujo que este Tribunal no tiene jurisdicción porque, a su juicio, al TPI denegar la solicitud de reconsideración presentada por la peticionaria, el término para recurrir al Tribunal de Apelaciones nunca se interrumpió. Asimismo, adujo que la solicitud para que se expida el recurso de *certiorari* no tiene que ver con la custodia, alimentos ni con el interés optimo de los menores, mientras que el asunto se trata de un patente, unilateral y deliberado incumplimiento y menosprecio al foro primario.

También, arguyó que la orden de protección tuvo el efecto de modificar únicamente aquellas disposiciones de la *Resolución* del 12 de febrero de 2024 con respecto a las relaciones filiales entre el recurrido y sus hijos y que todas las demás disposiciones, constituyen la ley del caso y no han sido modificadas. Por ello, adujo que el TPI actuó conforme a derecho y a una base de razonabilidad al imponer la sanción a favor del recurrido. Así las cosas, solicitó que se confirme la determinación recurrida ya que protege el interés óptimo de los menores.

Pormenorizado el trámite procesal pertinente a la controversia presentada por la petición de *Certiorari* de epígrafe, en adelante consignamos el derecho aplicable.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra,* R.52.1,[38] establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp. et al.,*** 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Construction, Inc.***, 201 DPR 703 (2019).

---

[38] Esta Regla dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Si el auto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo análisis. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[39]

**B.**

La jurisdicción es el poder o autoridad que posee un tribunal para considerar y adjudicar casos caso y controversias. *Peerless Oil v. Hnos. Torres Pérez,* 186 DPR 239, 249 (2012); *Solá-Moreno v. Bengoa Becerra,* 182 DPR 675, 682 (2011). Es norma reiterada que las cuestiones jurisdiccionales son privilegiadas y deben ser resueltas con preferencia a cualquiera otra. Los tribunales apelativos tienen un deber ministerial de velar por su jurisdicción, sin discreción para arrogársela cuando no la tienen. En todo caso,

---

[39] Esta Regla dispone lo siguiente:
> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

previo una decisión en los méritos, el tribunal determinará si tiene facultad para considerarlo. ***Arriaga Rivera v. F.S.E.,*** 145 DPR 122, 127 (1998); ***S.L.G. Szendrey-Ramos v. F. Castillo***, 169 DPR 873, 882 (2007). Por ello, un tribunal no tiene discreción para asumir jurisdicción cuando no la hay.

En el ámbito procesal, un recurso tardío "sencillamente adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre." ***S.L.G. Szendrey-Ramos v. F. Castillo,*** *supra*, pág. 883. Ello se debe a que su presentación carece de eficacia, por lo que no produce efecto jurídico alguno, ya que en el momento que fue presentado no había autoridad judicial alguna para acogerlo. Id.

En los casos en que se solicita la revisión de resoluciones u órdenes originadas en el Tribunal de Primera Instancia, se requiere que la parte adversamente afectada presente el recurso de *certiorari* dentro del término de cumplimiento estricto de treinta (30) días, contados a partir de la fecha de la notificación del dictamen. Regla 32 del Reglamento del Tribunal de Apelaciones, *supra*, pág. 47. En el caso de los términos de cumplimiento estricto, se ha resuelto que los tribunales pueden prorrogarlo si están presentes dos (2) condiciones: (1) que la parte presente justa causa por la cual no pudo cumplir con el término establecido; y (2) que exponga las circunstancias específicas para la dilación; es decir, que la parte interesada acredite de manera adecuada la justa causa aludida. ***Soto Pino v. Uno Radio Group***, 189 DPR 84, 93 (2013); ***García Ramis v. Serrallés***, 171 DPR 250, 253 (2007). Si no lo hace, los tribunales carecen de discreción para prorrogar el término y, por ende, acoger el recurso ante su consideración. ***Soto Pino v. Uno Radio Group***, supra, pág. 92.

De determinarse que no hay jurisdicción sobre un recurso o sobre una controversia determinada, procede su desestimación.

*González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).

A esos efectos, la Regla 83 del Reglamento del Tribunal de Apelaciones, *supra*, R. 83, nos autoriza a desestimar un recurso cuando estén presentes las circunstancias antes reseñadas.

**C.**

Es harto conocido que, los tribunales han estado facultados para imponer una serie de sanciones contra aquella parte que incumpla una orden del tribunal. *Mitsubishi Motor Sales of Caribbean, Inc. v. Lunor, Inc.*, 212 DPR 807, 818 (2023). En ese sentido, las Reglas 37.7 y 44.2 de Procedimiento 32 LPRA Ap. V, R. 37.7 y R. 44.2, regulan la imposición de sanciones en la litigación civil.

En lo pertinente, la Regla 44.2 de Procedimiento Civil, *supra*, autoriza al tribunal a imponer costas interlocutorias a las partes o sanciones económicas a las partes o sus abogados en todo caso o en cualquier etapa de los procedimientos si éstos incurren en "demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia". En específico, la aludida regla dispone lo siguiente:

> El tribunal podrá imponer costas interlocutorias a las partes y sanciones económicas, en todo caso y en cualquier etapa, a una parte o a su representante legal por conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia. El pago por tales conceptos se llevará a cabo por medios electrónicos o cualquier otro método o instrumento que el Juez Presidente o la Jueza Presidenta del Tribunal Supremo adopte, en coordinación con el Secretario o la Secretaria de Hacienda. **Las cantidades recaudadas por sanciones económicas impuestas a las partes o a sus abogados o abogadas ingresarán en el Fondo Especial de la Rama Judicial creado mediante la Ley Núm. 235 de 12 de agosto de 1998, según enmendada, para ser utilizados de la forma y para los fines allí expuestos.**
>
> Las sanciones económicas que el tribunal imponga al Estado Libre Asociado de Puerto Rico o a sus agencias, corporaciones o dependencias se concederán a favor de la parte contraria en el pleito. Íd. (Énfasis nuestro).

Nótese que la sanción impuesta no podrá ser pagadera a la parte contraria en el pleito. "La actual Regla 44.2 solo concede tal instancia cuando la sanción se le impone al Estado". ***Pérez Torres v. Acad. Perpetuo Socorro***, 182 DPR 1016, 1029 (2011).

**IV.**

De umbral, atendemos el planteamiento esbozado por el recurrido sobre falta de jurisdicción. Según alega, este Tribunal no tiene jurisdicción para atender el recurso porque la peticionaria lo presentó fuera del término jurisdiccional de treinta (30) días. En específico, arguyó que el término para presentar el recurso de *certiorari* no quedó interrumpido cuando la peticionaria radicó la solicitud de reconsideración de la *Resolución Interlocutoria Enmendada* porque el TPI declaró No Ha Lugar a dicha la solicitud de reconsideración. *No le asiste razón.*

De conformidad con la Regla 47 de Procedimiento Civil, *supra*, una vez el TPI dispone finalmente de la moción de reconsideración y se archiva en autos la copia de la notificación, entonces comienza a correr el plazo de treinta (30) días que la Regla 52.2 (b) de Procedimiento Civil, *supra*, otorga para poder recurrir ante este foro apelativo. Ahora bien, la propia Regla establece que el tribunal deberá rechazar la moción de reconsideración que no cumpla con las especificidades de la Regla 47, *supra*, y ésta se entenderá que no ha interrumpido el término para recurrir.

En el caso de marras, la peticionaria oportunamente presentó una moción de reconsideración a la determinación recurrida por lo que el término quedó en ese momento interrumpido. El foro primario denegó dicha solicitud en los méritos y no por incumplimientos con la regla. Pues, inclusive, le concedió término al recurrido para presentar su oposición. En consecuencia, el término comenzó a de cursar nuevamente en la fecha en que se archivó en autos la

notificación de la *Resolución* declarando No Ha Lugar la reconsideración. Por lo cual, sí ostentamos jurisdicción.

Atendido ese asunto, y tras un análisis objetivo, sereno y cuidadoso del expediente y de la petición de *certiorari*, y a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos expedir el auto peticionado y modificar la determinación recurrida.

Mediante el recurso de epígrafe, la peticionaria alegó que, luego de la estipulación de febrero de 2024 en la que se basó el TPI para establecer la sanción, las circunstancias del caso hicieron forzosa la toma de decisiones con relación al bienestar de los menores de forma distinta, incluido el hecho de que el Coordinador de Parentalidad se hizo inoperante por la expedición de la orden de protección.

De otra parte, el recurrido arguyó que los fundamentos de la determinación recurrida fueron correctos y hechos a base de razonabilidad dado a que la peticionaria, mediante sus decisiones unilaterales, violentó la *Resolución* del 12 de agosto de 2024, y afectó el interés óptimo de los menores.

A tenor con el expediente ante nos, las partes de epígrafe establecieron mediante estipulación un plan de relaciones paternofiliales que fue acogido por el TPI. Ambos ostentan la patria potestad de los menores, y la peticionaria retiene la custodia. Estos acordaron responsabilizarse por el seguimiento del área académica de los menores y consultarse respecto al cambio de institución, de manera previa o acudir al tribunal antes de cualquier matricula en otra institución. Asimismo, solicitar al tribunal, previo a cualquier acción, el traslado o relocalización de jurisdicción.

La peticionaria solicitó el traslado del caso a otra jurisdicción judicial y la autorización para el cambio de escuela de los hijos menores de edad, dado a que obtuvo una oferta de empleo en el área

oeste. El recurrido se opuso y argumentó que la peticionaria incumplió con plan de relaciones paternofiliales por lo que desacató las órdenes del tribunal. Tras una vista para discutir ese asunto, el TPI determinó que la peticionaria, en efecto, incumplió con la Resolución del 12 de febrero de 2024, por lo que le impuso una sanción de diez mil dólares ($10,000), a favor del recurrido.

Ciertamente, la peticionaria incumplió con lo ordenado por el TPI y la sanción impuesta está justificada, aunque diferimos de los términos de la misma. No obstante, según pormenorizado precedentemente, la Regla 44.2 de Procedimiento Civil, *supra*, autoriza al tribunal a imponer sanciones económicas a una parte que incurra en conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia. Las cantidades recaudadas por las sanciones económicas impuestas a las partes o a sus abogados o abogadas ingresarán en el Fondo Especial de la Rama Judicial. Es decir, que no será a favor de la otra parte.

Por ello, resulta forzoso concluir que el TPI incidió al imponerle a la peticionaria la sanción de diez mil dólares ($10,000.00) a favor del recurrido. Además, aun cuando el foro primario tiene amplia discreción para imponer las sanciones que estime necesarias, y en ausencia de circunstancias que demuestren obstrucción o falta de diligencia con lo estipulado en el caso, la sanción impuesta es excesiva. Inclusive, no se deprende del expediente del caso que exista un reiterado incumplimiento por parte de la peticionaria que amerite esa cantidad.

Por lo cual, determinamos que necesario intervenir y modificar dicha sanción.

**V.**

Por los fundamentos pormenorizados, se expide el auto de *certiorari* a los efectos de modificar la determinación recurrida. Se

reduce la sanción económica a $250.00, y se modifica para que sea pagadera al Fondo Especial de la Rama Judicial, conforme a derecho. Devolvemos el caso ante el TPI para que se actúe conforme a lo aquí resuelto. Tiene la peticionaria treinta (30) días para consignar la sanción en el TPI, a partir del recibo del mandato.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones